# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 2:14-cr-00038 |
| | ) | |
| JEREMIAH PASHUTA, | ) | Judge Mark R. Hornak |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

**Mark R. Hornak, United States District Judge**

The Defendant is detained in federal custody while facing drug and weapons charges in this Court. ECF No. 3, 14, 17, 18. Now, word comes that he faces Pennsylvania state charges for involuntary deviate sexual intercourse and related offenses as to a minor. Consistent with state law, a preliminary hearing will occur on Friday, June 20, 2014, on those state charges in order to test their sufficiency and determine if the Defendant will be held for trial pursuant to them. The state court has issued a writ of habeas corpus *ad prosequendum*, directed to the United States Marshal for the Defendant's attendance at that preliminary hearing.[1]

The United States advises the Court that consistent with normal practice, the Marshal would honor that request and transfer the Defendant to state officials for that hearing (apparently necessitating the Defendant's spending at least some time at the Allegheny County Jail, where the Marshal also routinely houses some federal prisoners), and then return him to the Marshal's custody. The Defendant, however, now says "not so fast" and that such a transfer may only occur

---

[1] The Court is not able to divine the Constitutional or other basis for a state court judge to "order" via such a writ the release or transfer of a prisoner in federal custody. The Court is not aware of any basis for a federal court to be bound to obey any such writ (particularly in light of the Supremacy Clause, U.S. Const. Art. VI, cl.2). If the Attorney General elects to treat it as a "request" for reciprocal custody under the comity/federalism principles discussed at greater length in this Memorandum Opinion, that would seemingly be a decision within his sound discretion.

if a federal judge (presumably an Article III judge) permits it.² He therefore moves to strike the Notice filed by the United States of that contemplated transfer, to stay any such movement, and to order the United States to show cause why such transfer should be allowed. ECF No. 39.

The Defendant argues that although since the decision of the Supreme Court in *Ponzi v. Fessenden*, 258 U.S. 254 (1922)³, such matters of reciprocity of custody for court appearances when criminal proceedings are engaged in both state and federal jurisdictions have been entrusted to the sound discretion of the Executive Branch in furtherance of the notion of comity in our federal system of dual sovereigns, the Bail Reform Act of 1984 ("BRA"), 18 U.S.C. § 3141, *et seq.*, changed the rules. According to the Defendant, now (and if his argument is taken at face value, really for the past 30 years since the BRA was passed) such inter-jurisdictional cooperation is not automatic or a matter of Executive discretion, and in each and every case in which there are pending, parallel federal and state criminal proceedings in which there is not yet a conviction, and where the defendant is detained in federal pretrial custody, an Article III judge must pass on the propriety of all such cooperative transfers before they occur.⁴

---

² The United States got the ball rolling on this entire situation when it filed a "Notice," ECF No. 30, advising the Court that the state court writ had issued, and that the Defendant would be moved to the state facility to allow his attendance at the preliminary hearing. Puzzled by the filing of what to the Court was a novel pleading, the Court convened a status conference with all counsel to ask, among other things what the Court should make of the Notice, and whether any judicial action was required. At that status conference, counsel for the United States advised the Court and counsel for the Defendant that the sole purpose of the Notice was to advise the Court of the Defendant's whereabouts in the event the Court was planning to schedule something that might involve him.

While the Court appreciates any counsel being attentive to the vagaries of the Court's calendar, this whole thing is a bit odd. Why so? First, the Defendant had previously been set for a change of plea hearing. That was cancelled when his then-lawyer had to withdraw due to a conflict. His next appointed lawyer then had to do the same. Then, Mr. Livingston was appointed, and an extension of time for the filing of pretrial motions was authorized to allow Mr. Livingston to get up to speed. There are no such motions pending, there is no change of plea hearing set, Mr. Livingston is learning his client's case, and from the Court's perspective, the waters were calm. It is difficult to immediately fathom what proceedings it was possible or likely the Court would have scheduled on one particular day in June, 2014 that triggered the Notice from the United States.

³ Yes, *that* Charles Ponzi, the confidence trickster of "Ponzi scheme" infamy.

⁴ As the Defendant's counsel asserted at the most recent status conference on this matter, without such judicial authorization, the Marshal maintains custody, or more colloquially as Defendant's counsel stated, has "dibs" over

2

In furtherance of this argument, the Defendant asks this Court to enter an Order staying any transfer to temporary state custody for purposes of the Defendant's attendance at the preliminary hearing on the state sex assault charges, to strike the Notice of the United States of such impending transfer, and to issue a Rule to Show Cause as to such proposed transfer.[5] Because this Court cannot conclude that federal law requires it to approve in advance any such action by the United States acting through the United States Marshal, and that if it did, the Court would on the record before it approve such actions on the terms set forth herein, the Motion is denied[6].

The Court has conducted two status conferences with counsel on this matter. At the most recent conference of June 16, 2014, when asked what (if any) prejudice could befall the Defendant if he was taken to state court for the preliminary hearing, his counsel could only point to the fact that if the state prosecution moved along more quickly than the federal proceedings, and ended up in a conviction in state court, it could result in the Defendant having a higher Advisory Sentencing Guidelines "score" for federal sentencing purposes. While that might not be a good thing from where the Defendant sits, that is not legal "prejudice" for these purposes. Any such potential bad news for the Defendant would not be the result of some Constitutional irregularity in legal proceedings, but of his own criminal conduct, if such conduct were proven in state court.

---

the Defendant until the federal prosecution runs its course. To his professional credit, Defendant's counsel has also candidly advised the Court that he is asking this Court to go where no court has gone before.

[5] It appears that the Defendant's position is that until there is a conviction somewhere that triggers the application of the Interstate Agreement on Detainers, 18 U.S.C. App. §§ 1-9, the Defendant is to stay in exclusive federal custody. The Defendant does not address directly the possibility that the Marshal could elect to keep the Defendant in his direct custody, and simply attend the state court hearing with the Defendant and then return him to a physical location where the Marshal routinely houses those in his federal custody. As noted above, in this District, that includes the Allegheny County Jail.

[6] At the most recent status conference of June 16, 2014, the Court asked counsel for the Defendant and for the United States if they wanted the Court to conduct any sort of hearing, evidentiary or otherwise, on June 18, 2014. Each expressly stated that no such hearing was necessary and the Court could resolve this matter on the papers.

Defendant also says that since the BRA, a defendant now has a protectable legal interest in where and how he is confined once there is a federal pre-trial detention order entered.[7] In spite of some really deep digging, this Court has been able to find absolutely no case law that would support such a principle, and none has been cited by the Defendant. The legislative history of the BRA does not support that view[8], and since *Ponzi*, the case law is uniform that a Defendant simply has no standing to call into question the conduct of the Executive Branch in its cooperation with a state sovereign in managing the Defendant's pretrial attendance at state or federal proceedings.[9] The Court can find nothing in the BRA or post-1984 case law that reveals, in intention or effect, any Congressional change to that more than ninety-year old rule of law.[10]

The Defendant points to the language of 18 U.S.C. § 3142(i) for the proposition that such standing should now be assumed, since that provision authorizes a federal judge to temporarily release a defendant for purposes of preparing his defense or other "compelling" reasons. The legislative history is silent on the purpose of that provision, but taken at face value, that language is not a limitation on the power of the Executive Branch to abide by nearly a century of "comity" principles based on our federal system. Instead, it is a "safety valve" authorizing a federal judge

---

[7] This is not a case challenging the "conditions of confinement" under the Fifth, Eighth and Fourteenth Amendments. Whether in federal or state custody, those Constitutional imperatives apply, but that is not a BRA matter.

[8] *See* H.R. REP. NO. 98-1121 (1984); S. REP. NO. 98-225 (1983).

[9] *See Bowman v. Wilson*, 672 F.2d 1145, 1154 (3d Cir. 1982); *Smith v. Tennis*, 2009 WL 891886, at *5 (E.D. Pa. Mar. 5, 2009); *Rinick v. United States*, 2008 WL 5194295, at *3 (E.D. Pa. Dec. 3, 2008); *see also, Poland v. Stewart*, 117 F.3d 1094, 1098 (9th Cir. 1997); *Spencer v. Hamilton*, 12 F.2d 976, 977 (8th Cir. 1926).

[10] When Congress intends to abrogate or modify the effect of a Supreme Court decision, it has shown the facility for expressly doing so by saying just that in its findings as set forth in a statute, such as with the ADA Amendments Act of 2008, expressly abrogating by statute the effect of the Supreme Court's interpretive decisions in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002). Pub.L. No. 110-325, §2(a), 122 Stat.3553, §2(a), *amending* 42 U.S.C §12101, *et seq.* Congress also took the same tack with the Religious Freedom Restoration Act, 42 U.S.C. §2000bb, seeking to abrogate *Employment Div. v. Smith*, 494 U.S. 872 (1990). There is no similar statement of findings or intentions relative to *Ponzi* and the BRA.

to release a defendant otherwise in pre-trial detention for purposes of his own defense, notwithstanding that he had been detained under the BRA.

The Defendant makes a well-reasoned legislation-based policy argument in reliance on the BRA that carries some considerable logic. In sum, he argues that the BRA is a comprehensive Congressional enactment that addresses all phases of the pre-trial custody process, one in which on-going judicial engagement is both anticipated and directed. He notes that his pre-trial federal custody is in direct consequence of the motion of the United States for such federal custody, and the structure of the BRA is such that it can only be logically read as providing for on-going federal judicial supervision of at least that custody status. He notes, among other things, that the fact of such pre-trial custody is open for further judicial consideration at any time in the process, that if no custody is ordered or is later vacated, the terms of pre-trial release are within judicial as opposed to Executive Branch control, and that the overarching directive of the BRA is one that has judicial supervision as its foundation.

That said, given the silence of the language of the BRA and its legislative history as to any effort to alter the effect of the *Ponzi* rule, along with the line of post-BRA cases applying those principles, even in the pre-trial setting, and casting no doubt upon its application or vitality for BRA reasons or otherwise, the Court does not conclude that the BRA altered those comity and federalism principles in the manner posited by the Defendant.[11]

First, there is nothing about the Defendant's contemplated appearance at the state court preliminary hearing that would necessarily result in his literal release from federal custody. An examination of the terms of the state court writ, ECF No. 39-1, also reveals that it does not

---

[11] The Defendant also makes a number of references to various publications of the United States Marshals Service that he says cast doubt on that agency's willingness to comply with the type of writ issued here. Even if that is so, then that would appear to the Court to be a self-announced statement of how the Executive's discretion will and will not be exercised, rather than a judicially-enforceable limitation on that discretion.

5

facially "order" or seek the Defendant's "release" from federal custody. Instead, it "directs" that the Marshal keep the Defendant in the Marshal's custody at his current place of detention (the Northeast Ohio Correctional Center, or "NEOCC"), that the Marshal "produce" the Defendant at the state municipal court for his preliminary hearing, and that the Defendant be lodged at the Allegheny County Jail without bail until he is "returned" to the Marshal and then to NEOCC. The writ ends by saying that custody is to be "obtained" on or about June 19, 2014.

To the extent that the Defendant contends that because a federal judge has ordered his federal pre-trial detention, at the behest of the United States, only a federal judge can alter that state of detention, there is a certain logic to his argument, on both BRA and Supremacy Clause grounds. On the other hand, on the facts of the situation, given that the Marshal currently houses defendants on pre-trial detention at not only the NEOCC, but also the Allegheny County Jail, the writ, if honored by the Marshal, can also be fairly read as "asking" the Marshal to do several things. First, to keep the Defendant at NEOCC and don't let him out, making the writ in effect a form of a detainer if the Defendant was to be otherwise imminently released by federal court order. Second, to bring the Defendant to the state court facility for his preliminary hearing, by "producing" him at that place and time. Lastly, it states that he would be at the Allegheny County Jail and promises to have him there "without bail" which would certainly be consistent with his custodial state.

What complicates the matter is the reference in the writ to the Defendant being returned to NEOCC by the Allegheny County Sheriffs. That verbiage, if honored literally by the Marshal, would seem to contemplate that for some period of time, the Defendant will be outside of the federal custody ordered by this Court. On the one hand, if the Marshal "honors" the state's request by maintaining "federal" custody of the Defendant, but in doing so, transports him to

6

state court, houses him (if necessary at all) in the "federal" section of the County Jail, and then takes him back to NEOCC, it would seem to the Court that his "federal" custody status would not change; only the physical location of that custody would. On the other hand, if the Marshal elects to "honor" the state court writ by physically turning the Defendant over to the state authorities, the issue is raised, and appears to be raised by the Defendant, as to whether that is so fundamentally inconsistent with the BRA and court orders under it so as to require advance judicial approval.

The Court thinks not. While from the Court's perspective, the United States can pretty easily avoid that whole issue by maintaining constant federal control over the Defendant, should it elect to not do so, that would nonetheless appear to be consistent with the *Ponzi* doctrine, and the subsequent cases relying upon it. Whether the Defendant's custody is pre- or post-conviction, either way, he is in federal custody by virtue of a federal judicial order, and as noted above, this Court can divine no express or implicit effort by Congress to abrogate the application of the *Ponzi* doctrine in a pre-conviction BRA setting or otherwise. Thus, while the United States, and the Marshal, remain at all times responsible under the law, and to this Court, for the detention and well-being of the Defendant and his safe and sure custody and movement, *Ponzi* appears to continue to stand for the proposition that the Executive is accorded broad authority, in the sound and reasonable exercise of his discretion, to honor the principles of comity and federalism which are the bedrock for the *Ponzi* rule.

Based on the Court's review of the BRA, its legislative history, the post-BRA-enactment application of the *Ponzi* doctrine and the scope of that ninety year old rule of law, the Court cannot, and does not, conclude that the advance approval of an Article III judge is required before the movement of the Defendant contemplated here may occur.

Going to the next step, even if such approval were required here, this Court would give it. First, there is nothing in the record that would reveal that the Marshal's cooperation with state authorities for purposes of the Defendant's attendance at the preliminary hearing would otherwise be the entré to some sort of underlying hallmark Constitutional violation by the Commonwealth of Pennsylvania. This is not a situation where the record shows that it is likely that, for instance, the Defendant is being transferred in order to face some facially unconstitutional state law proceeding or punishment, to come before some sort of "kangaroo court," to be exposed to torture, unconscionable conditions of confinement, banishment, trial or other proceedings without Due Process protections, or similar facially unconstitutional actions. That is not to hold that in those cases, this Court would have some sort of preemptive jurisdiction to stop the Defendant's transfer or attendance in state court (although it well might), but only to point out that none of that is in the mix in this case.[12]

Second, the express language of the putatively applicable provisions of the BRA supports the denial of the Defendant's motion to stay his transfer. First, Section 3142(i) expressly authorizes a "release" for attendance at a court proceeding (without statutory or historical limitation on which "court"), which the preliminary hearing certainly is. While the Defendant logically argues that that has to be read as referring to only *federal* court proceedings, there is no such limitation in the statutory language nor in the legislative history of the BRA, and that language is certainly not inconsistent with *Ponzi*.

---

[12] The fact that the Attorney General or his designees, consistent with *Ponzi*, decides to cooperate with state authorities in regard to the Defendant's appearance in state court does not diminish the reality that the Attorney General and his designees remain responsible under the law and to this Court for the safe care and conduct of the Defendant throughout that process. There is at least some residual judicial oversight, even under the *Ponzi* doctrine, when the federal custody of the Defendant is as the consequence of the Court's ordering it, upon the motion of the United States. Otherwise, the Executive, acting through the Marshal or the Department of Justice, could simply release the Defendant from all custody, which he surely may not do.

8

Beyond that, if this Court were to conclude that it could permit the transfer only if there was a "compelling" reason, adherence to the doctrines of comity and federalism that the Supreme Court identified in *Ponzi*, and which legions of federal courts have applied over the past century, would be just such a compelling reason. Such cooperation in our federal system of government is by any definition a significant proposition, going to the very core of a jurisprudential structure composed of dual and parallel sovereigns, and for these purposes, is just such a "compelling" reason, especially when the record reveals no apparent Constitutional or legal prejudice to a hypothetical defendant, or this Defendant, in these circumstances.[13]

The Motion to Stay Transfer, to Strike Notice, and to Issue a Rule to Show Cause is denied.

_____
Mark R. Hornak
United States District Judge

Dated: June 18, 2014

cc: All counsel of record

---

[13] While it appears that the state court charges are by any measure quite serious, the Court does not give a lot of weight to the final argument of the United States in its papers, tying the nature of those charges to the "compelling" nature of the proposed course of action. While the Court supposes that if the charges in state court were truly "minor" by anyone's definition, this might not even be before the Court, the fact that the charges in state court are most serious would not steer the Court to condone a course of Executive action that would otherwise run afoul of a federal statute such as the BRA, or controlling judicial precedent.

9